IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HERMAN SWIFT,                                   :    CIVIL ACTION
        Plaintiff,                        :
        v.                                 :    3: CV 00-1705

MARTIN L. HORN  (Secretary)                     :
BEN VARNER   (Superintendent)                   :
DEE REGULSKI (C.P.S. Administrator)             :
PAT GINOCCHETTI (H.C. Administrator)            :
STANLEY STANISH (Medical Director)              :
DR. RAKLEWIEZ (Orthopedic Surgeon)              :
KENNETH BURNETT (Grievance Coord.)              :
ROBERT S. BITNER (Chief Hearing Exam.):
CHRIS PUTNAM (B Block Unit Manager)             :
        Defendants.                       :

RECEIVED SEP 12 2000

**CIVIL RIGHTS COMPLAINT UNDER §1983 at seq.**

### I. Statement of Jurisdiction

1. This is a civil rights complaint authorized pursuant to the provision set forth in Title 42, of the United States Code, §1983 *et seq.*, to redress deprivations, "under the color of statement law," of rights, privileges and immunities secured under state and federal constitutional law, statutes, codes, rules, regulations, ordinances, customs and usage.

2. This court's jurisdiction is conferred under Title 28 §§1331 and 1343(3) & (4).

3. Plaintiff seeks a declaratory judgment pursuant to the provisions set forth under 28 U.S.C. §2201 and he seeks a preliminary injunction (under Fed. R.Civ. P. 65) and a permanent injunction under 28 U.S.C. §2201.

4. The amount in controversy exceeds ten thousand dollars ($10,000).

### II. Statement of Parties Involved

1. **THE PLAINTIFF:** Herman Swift, CE-8598 is a prisoner at the State Correctional Institution at Dallas, 1000 Follies Road, Dallas, Pa 18612.

FILED SCRANTON SEP 2 5 2000

- 1 -

1. **THE DEFENDANTS:**

(a) Martin Horn, Secretary, Department of Corrections, P.O. BOX 598, Camp Hill, Pa. 17001.

(b) Ben Varner, Superintendent at S.C.I. Dallas, 1000 Follies Road, Dallas, Pa. 18612.

(c) Kenneth Burnett, Grievance Coordinator at S.C.I. Dallas, 1000 Follies Road, Dallas, Pa. 18612.

(d) Dee Regulski, C.P.S. Administrator at Dallas, 1000 Follies Road, Dallas Pa. 18612.

(e) Pat Ginocchetti Health Care Administrator at S.C.I. Dallas, 1000 Follies Road, Dallas Pa. 18612.

(f) Stanley Stanish, Medical Director at Dallas, 1000 Follies Road, Dallas Pa. 18612.

(g) Ms. Chris Putnam, B Block Unit Manager at S.C.I. Dallas, 1000 Follies Road, Dallas Pa. 18612.

(h) Michael Raklewicz, Orthopedic Surgeon, 390 Pierce Street, Kingston, Pa. 18704.

(i) Robert S. Bitner, Chief Hearing Examiner, 1451 N. Market Street, Elizabethtown, Pa. 17022.

2. Plaintiff reserves the right to file a amended complaint adding additional defendants and allegations following the exercise of discovery.

### III. Factual Allegations

1. As the attached Exhibits supports, plaintiff has exhausted all available administrative remedies under D.C. 804 and, although his grievance and complaint are yet outstanding, Pennsylvania's Department of Corrections has no other effective corrective process to remedy his grievance.

2. On April 15, 2000, plaintiff slipped and fell in the institutional shower on B Block, and as a result of that incident, plaintiff broke the bones in his right wrist.

3. Plaintiff's fall was caused by unsafe hazardous conditions due to inadequate water drainage. This water damage to the floor caused dips in the floor where puddles of water and soap collected in different locations of the of the shower room. Many grievances have been lodged over the past few years directed specifically at this danger with absolutely no actions taken to correct the problem.

4. On April 16, 2000, plaintiff was sent to the S.C.I. Dallas Hospital and, after complaining about pains in his right wrist and back, plaintiff was told by the nurse on duty to sign up for sick call on Monday, April 17, 2000.

5. Upon returning to B Block, plaintiff signed up for sick-call for Monday, April 17. On that date, plaintiff went to sick-call and was examined by the medical personnel. He complained about pain in his wrist and back and, and at that time, his back and wrist was ex-rayed. On Friday, April 21st, plaintiff was informed that he would be taken outside of the prison to be examined by a doctor (because) he had broken bones in his wrist. He was taken out to a Dr. Raklewicz, an Orthopedic Surgeon in Kingston, Pa. Dr. Raklewicz

then done ex-rays on plaintiff's right wrist. At this time the Doctor informed plaintiff that he had separated bones in his wrist and that surgery must be preformed. Surgery was then scheduled at that time.

6. On April 25, 2000, plaintiff was taken from S.C.I. Dallas to Wilkes-Barre General Hospital for said surgery. Dr. Raklewicz then told plaintiff that pins must be placed in his wrist, which would pull the dislocated bones back into position.

7. Notwithstanding, since receiving surgery on his right wrist, plaintiff has since lost use of his right hand and approximately 75% motion in his right wrist. Plaintiff has returned to sick-call numerous times since this surgery, complaining repeatedly to Institutional Doctors of terrible pain in his right wrist.

8. On May 12, 2000, Plaintiff was taken back to Dr. Raklewicz's office. The Doctor then removed the splint from plaintiff's right wrist and hand and replaced the splint with a cast. The Doctor then ex-rayed plaintiff's right wrist. The plaintiff wore this cast for approximately five weeks.

9. At the end of the five week period, plaintiff was then returned to this same Doctor. The cast was then removed and the two pins were removed from plaintiff's wrist. After approximately ten days, plaintiff was examined by the medical staff at S.C.I. Dallas and was informed that his wrist, "did not look right!"

10. On or about June 6, 2000, plaintiff started therapy for his right wrist and hand. After approximately two weeks, the Therapist saw no change in plaintiffs wrist and informed plaintiff that "something didn't feel or look right" in his wrist and then informed plaintiff that "he may never have full motion in his wrist again."

11. On June 22, 2000, plaintiff received another ex-ray of his right wrist at the S.C.I. Dallas Hospital. On Monday, June 26th, Plaintiff signed up again for sick-call to receive the results of that ex-ray. Ms. Kelly Gallagher then read the results of the ex-ray to plaintiff. He was informed that the bones in his wrist were the same as they were **prior** to the surgery. "The surgery did nothing to repair plaintiff's broken wrist. The surgery did leave a scar approximately 5 inches on top of plaintiff's right hand and wrist. Also this surgery caused loss of motion and constant pain in plaintiff's wrist and hand.

12. On Friday, June 30, plaintiff was taken at approximately 7:30 a.m. back to Dr. Raklewicz's office and was examined by Dr. Heinz whom is the partner of Dr. Raklewicz. The plaintiff explained to this Doctor the pain and cramping that he was experiencing and also the loss of motion in his wrist and hand. Dr. Heinz informed plaintiff that he needed therapy. Plaintiff informed this Doctor that he had been taking therapy at the institution and repeated ex-rays had been done. Plaintiff also informed Dr. Heinz that when the Therapist read the medical report and discovered that the plaintiff's wrist was not repaired, the therapist then stopped his treatment on plaintiff because continual therapy "could cause more damage" to plaintiff's wrist than already done. Doctor Heinz then had another ex-ray taken of both right and

left wrist. Dr. Heinz then took the two ex-rays and compared them together. He then informed the plaintiff that the "pins did not pull the bones back into allignment." Dr. Heinz then told plaintiff that he had to discuss this problem with his partner, Dr. Raklewicz. Dr. Heinz then informed plaintiff, "The only other alternative was to let them remove the damaged bone from his right wrist all together".

13. On August 4, 2000, the plaintiff was then taken back outside to have a M.R.I. test taken. The results of this M.R.I. showed that the bones were still dislocated and the tendons and ligaments were still torn loose from the bones in the wrist.

14. On August 10, 2000, plaintiff was taken back to Dr. Raklewicz's office and another ex-ray was done which showed the same results as listed above.

15. At the time of this filing, plaintiff's wrist injury has not been repaired through corrective surgery. The initial so called surgery has amounted to nothing but an undue amount of infliction of pain and sufferance.

16. While plaintiff was medically disabled from lodging a complaint in a timely manner regarding the cause for his fall and the aftermath, defendants deprived plaintiff of a full, fair, and adequate process to litigate his grievances which constitutes a "on-going and continual wrong".

17. Defendants denied plaintiff of procedural due process of law by declaring his grievance/complaint "untimely" when in fact it is on-going and continual since plaintiff's wrist and hand injury was not medically corrected but, instead, plaintiff was subjected to cruel and unusual punishment and sufferance because his wrist was not healing, defendants **willfully** and deliberately denied plaintiff of a remedy or,

18. Defendants failed in this official duty to avail plaintiff to another medical facility to correct his wrongful surgery.

## IV. Relief Sought

1. Plaintiff has no plain or adequate remedy if this court does not afford plaintiff of a remedy from defendant's violations of his right to adequate and proper medical treatment.

2. For the foregoing reasons, plaintiff seeks a declaratory judgement declaring that (a) defendants violated plaintiff's constitutional rights in violations of the 8th Amendment and (b) defendant deprived plaintiff of a adequate proper and adequate medical corrective process to relieve his pain and sufferance and to repair the so-called surgery that inflected greater damage to plaintiff's wrist and hand. Additionally, plaintiff seeks a declaratory judgement extending civil liability to defendant Raklewicz as a contracting agent of the defendants, state officials.

3. Plaintiff seeks injunction relief in the form of a preliminary injunction and a temporary restraining order to provide plaintiff with "corrective surgery" in order to repair his wrist and hand. Additional, plaintiff seeks a permanent injunction requiring defendants to install proper

non-slip floor surfaces and appropriate repairs in order to make this shower room safe for all prisoners to prevent further injuries.

    4. Plaintiff seeks compensatory damages in the amount of one million dollars ($1,000, 000.00) from the defendants collectively for undue physical and emotional pain and anguish which could have been prevented and/or reduced had defendants addressed plaintiff's attempts to lodge grievances.

    5. Plaintiff seeks punitive damages from defendants collectively due to their subjecting plaintiff to undue pain and sufferance and, for failing to take proper steps to effectuate process to avail plaintiff to "another" medical facility to perform corrective surgery to reduce plaintiff's pain and cause a proper healing procedure.

    6. Plaintiff seeks perspective damages because he can not use his hand and wrist to continue his work skills after prison and, to provide future medical and therapy care and treatment.

    7. Plaintiff seeks a jury trial on all issues triable by jury.

    8. Plaintiff seeks reasonable attorney fees.

    9. Plaintiff seeks what further and additional damages this court deems, just, fair, and adequate.

Dated: 9-7-00

Respectfully submitted,

Herman Swift, Plaintiff

I HEREBY DECLARE THAT THE FOREGOING IS TRUE AND CORRECT:

Dated: 9-7-00

Herman Swift, affiant
SCI-Dallas    CE-8598
1000 Follies Road
Dallas Pa. 18612

- 5 -

B

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
Office of the Chief Hearing Examiner
1451 North Market Street
Elizabethtown, PA 17022

INMATE NAME: _HERMAN SWIFT_   INMATE #: _CE 8598_

INSTITUTION: _DALLAS_   _NONE_
                        Grievance/Misconduct Number, if relevant

FROM:  Robert S. Bitner _[signature]_
       Chief Hearing Examiner       DATE: _8-21-00_

This is to acknowledge receipt of your letter to the Central Office. Upon review of the issue(s) you raise, I am filing your letter without action for the following reason(s):

1. _XX_ You have not utilized the official inmate grievance system as outlined in DC-ADM 804 in your inmate handbook.

2. ___ You need to include the official identification number of the misconduct / grievance.

3. ___ You need to identify the specific publication(s) you are appealing.

4. ___ According to institution records, you have not completed appeal to the Superintendent.

5. ___ Your claim to have appealed to the Superintendent without response does not entitle you to direct appeal to final review. Contact the Superintendent's office to ensure they received your appeal.

6. ___ The COMRC has been abolished per DC-ADM 804-1, effective May 20, 1996. The next step in the appeal process of your medical grievance is to send your appeal to the Superintendent.

7. ___ Your appeal to final review is unacceptably untimely.

8. ___ Staff responses, including the Superintendent, to inmate request slips are not appealable to Central Office.

9. ___ Your initial confinement to Administrative Custody may be appealed through final review in accordance with DC-ADM 802. Pursuant to DC-ADM 802-3, c, there is no appeal beyond the Superintendent of a thirty (30) day review before the Program Review Committee.

10. ___ Your Administrative transfer to another institution is not appealable to Central Office.

11. ___ This office has no prior record of receipt of an appeal from you on this issue.

12. ___ You have already received final review of this issue.

ADDITIONAL COMMENTS: _You fell on April 15 and didn't grieve until 6-30. Your grievance was rejected as untimely and there is no appeal of that action to final review._

**DC-804**
PART II

**56**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

**OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE**

GRIEVANCE NO. | DAL-0470-00

| TO: (Name & DC No.) | INSTITUTION | QUARTERS | GRIEVANCE DATE |
|---|---|---|---|
| SWIFT, HERMAN CE-8598 | SCI-DALLAS | B | 7/07/00 |

The following is a summary of my findings regarding your grievance:

According to Ms. Ginocchetti, Health Care Administrator, a review of your medical record indicates that you are being treated according to proper medical protocols for a wrist fracture that occurred in April, 2000. It is common professional practice for specialists to confer with one another regarding a case. All medical personnel employed by the Department of Corrections, including specialists, are properly licensed and credentialed. Therefore, doctors confer for the best interest of the patient.

KB:gc
cc:   Ms. Ginocchetti
      Dr. Stanish
      Ms. Putnam
      DC-15
      File

Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures.

SIGNATURE OF GRIEVANCE COORDINATOR: M. Burnett

DATE: 7/21/2[  ]

Exhibit A
| DC-138A | (56) COMMONWEALTH OF PENNSYLVANIA |
|---|---|
| **CASH SLIP** Sold | DEPARTMENT OF CORRECTIONS |

Herman Swift

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| CE8598 | B-56 | 9-6-00 |

**2. RECEIVING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

**3. ITEMS TO BE CHARGED TO MY ACCOUNT**

Please deduct the following Certified mail to be sent to the United States District Court, M.D. ARLENE BAYERS Chief Dep Clerk, 908 Federal Build. Harrisburg Pa. 17108

Tracking Number 7099 3220 0007 2818 8413

**4. INMATE'S SIGNATURE** Herman Swift

**5. OFFICIAL APPROVAL**

**6. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| $ 4.30 | SEP 11 2000 | |

---

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

Article Sent To: US Dist Court Harrisburg Pa. M.D.

Postage $ 56
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $ 4.30

Postmark SEP 8 2000 Here

Name: Herman Swift CE8598
Street, Apt. No.; or PO Box No.

7099 3220 0007 2818 8413

NOTARIAL SEAL
JOHN J. FLAHERTY, Notary Public
Jackson Twp., Luzerne County, PA
My Commission Expires May 28, 2001

Sworn and subscribed before me this _____ day of Oct 20 00

Exhibit B

Exhibit A

- Sender: Please print your name, address, and ZIP+4 in this box •

HERMAN Swift CE-8598
1000 Follies Road B
DAllAs, PA. 18612

UNITED STATES POSTAL SERVICE

56

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

- Sender: Please print your name, address, and ZIP+4 in this box •

HERMAN Swift CE 8598
1000 Follies Road
Dallas PA. 18612

56

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

NOTARIAL SEAL
JOHN J. FLAHERTY, Notary Public
Jackson Twp., Luzerne County, PA
My Commission Expires May 28, 2001

Sworn and subscribed before me this
_____ day of Oct ____ 20 00

Exhibit B

Exhibit A

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Arlene Bayers
Chief Deputy Clerk
United States District
Court, Middle Division
908 Federal Building
Harrisburg PA, 17108

2. Article Number (Copy from service label)
7099 3220 0007 3818 8413

PS Form 3811, July 1999   Domestic Return Receipt   102595-99-M-1789

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
SEP 11 2000

C. Signature
X _[signature]_   ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Arlene Bayers
US District Ct
Bx 908
HBG PA 17108

2. Article Number (Copy from service label)

PS Form 3811, July 1999   Domestic Return Receipt   102595-99-M-1789

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
SEP 12 2000

C. Signature
X _[signature]_   ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

---

NOTARIAL SEAL
JOHN J. FLAHERTY, Notary Public
Jackson Twp., Luzerne County, PA
My Commission Expires May 28, 2001

Sworn and subscribed before me this
10 day of Oct 2000

_[signature]_