IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERMAN SWIFT, | : | CIVIL ACTION NO. 3:00-1705 |
| Plaintiff | : | (KANE, J.) |
| v. | : | (DURKIN, M.J.) |
| MARTIN HORN, et al., | : | |
| Defendants | : | |

FILED
SCRANTON
OCT 2 4 2000
PER _____ DEPUTY CLERK

## REPORT AND RECOMMENDATION

Plaintiff, an inmate at the State Correctional Institution at Dallas, ("SCI-Dallas"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983, in which he alleges a violation of his constitutional rights. (Doc. No. 1).

Named as defendants to this action are the following officials and employees at SCI-Dallas: Martin Horn, Secretary, Department of Corrections; Ben Varner, Superintendent; Kenneth Burnett, Grievance Coordinator; Dee Regulski, C.P.S. Administrator; Pat Ginocchetti, Health Care Administrator; Stanley Stanish, Medical Director; Chris Putnam, Unit Manager; Michael Raklewicz, Orthopedic Surgeon; and Robert S. Bitner, Chief Hearing Examiner.

On September 25, 2000, the plaintiff filed the appropriate application to proceed in forma pauperis and authorization forms. (Doc. Nos. 2 & 3). An administrative order was issued on the same day. (Doc. No. 4). Thus, the complaint will now be given preliminary consideration.

In his complaint, the plaintiff alleges that on April 15, 2000, he slipped and fell in the shower at SCI-Dallas, which resulted in broken bones in his right wrist. (Doc. No. 1, p. 2).

On April 16, 2000, the plaintiff alleges that he complained

1

about pains in his right wrist and back, and was sent to the prison hospital, where he alleges that he was told by the nurse to sign up for sick call for the following day. (Id.).

The plaintiff alleges that he went to sick call on April 17, 2000, and was examined by medical staff members, who took x-rays of his back and wrist. (Id.).

According to the plaintiff, he was taken to an outside hospital on April 21, 2000, to be examined because he was told that he had broken bones in his wrist. The plaintiff alleges that he was taken to see defendant Raklewicz, an orthopedic surgeon, who took more x-rays of his right wrist and informed him that he had separated bones in his wrist. The plaintiff alleges that defendant Raklewicz also informed him that he needed surgery, which was scheduled for and performed on April 25, 2000. (Doc. No. 1, pp. 2-3).

On May 12, 2000, the plaintiff alleges that he was taken for a follow-up visit with defendant Raklewicz, at which time a splint was removed from his wrist and replaced with a cast. After five weeks, the plaintiff alleges that he was returned to defendant Raklewicz, who removed the cast. (Doc. No. 1, p. 3).

The plaintiff alleges that he was subsequently examined by prison medical staff members, who informed him that his wrist "did not look right". (Id.).

On June 6, 2000, the plaintiff alleges that he began therapy, but that after approximately two weeks of therapy, the therapist saw no change in the condition of his wrist. As a result, he alleges that another x-ray was taken on June 22, 2000, which showed that the bones in his wrist were the same as they were prior to the

2

surgery. (Id.).

According to the plaintiff, on June 30, 2000, he was returned to defendant Raklewicz's office and was examined by another physician, Dr. Heinz[1], who informed him that he needed therapy. After the plaintiff informed Dr. Heinz that he had already been undergoing therapy, he alleges that Dr. Heinz took x-rays of both of the plaintiff's wrists and compared the two. According to the plaintiff, Dr. Heinz informed him that the surgery did not "pull the bones back into alignment (sic)". (Doc. No. 1, pp. 3-4). The plaintiff alleges that Dr. Heinz stated that he would need to discuss the situation with defendant Raklewicz, but that the only other alternative was to let them remove the damaged bone from his wrist. (Doc. No. 1, p. 4).

On August 4, 2000, the plaintiff alleges that he was taken to an outside facility to undergo an M.R.I. test, which showed that "the bones [in his wrist] were still dislocated" and that "the tendons and ligaments were still torn loose from the bones in his wrist". (Id.).

On August 10, 2000, the plaintiff alleges that he was taken back to defendant Raklewicz's office, where another x-ray was taken and confirmed the above M.R.I. findings. (Id.).

On September 25, 2000, the plaintiff filed the instant action, in which he alleges that the condition of his wrist has not been corrected and that the defendants have failed to "avail [him] to another medical facility to correct his wrongful surgery". (Id.). As a result, the plaintiff is seeking injunctive relief, as well as

---

[1] Dr. Heinz has not been named as a defendant to this action.

3

compensatory and punitive damages.[2] (Doc. No. 1, pp. 4-5).

Initially, in an action brought pursuant to § 1983, the plaintiff must allege and prove that the defendant(s) deprived him of a right secured by the Constitution and laws of the United States. Maine v. Thiboutot, 448 U.S. 1 (1980). Moreover, liability pursuant to § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct, shown through specific allegations of personal direction or of actual knowledge and acquiescence. Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Although the Supreme Court has held that courts may not require a civil rights litigant to plead with greater specificity that other plaintiffs, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993), under Fed.R.Civ.P. (8), a civil rights complaint must still set forth the essential elements of its claim clearly and concisely. This includes making allegations which show the personal involvement of each defendant in any violation of the plaintiff's constitutional rights. See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 102 (3d Cir. 1976).

Here, with the exception of naming defendants Horn, Varner, Burnett, Regulski, Ginocchetti, Stanish, Putnam and Bitner in the caption of the complaint, the plaintiff has failed to set forth any

---

[2] The complaint also contains a "boilerplate" request for declaratory relief which is remedial in nature. However, where the constitutional violation is alleged to have already occurred, as in the instant case, and there is no threat of future harm, declaratory relief is inappropriate. Sawm v. Widnall, 912 F. Supp. 1384 (Dist. Colo. 1996); See also Friedman v. Geller, 925 F. Supp. 611 (E.D. Wisc. 1996)(It is inappropriate to use the declaratory judgment statute in what would otherwise be a run-of-the-mill negligence action).

4

allegations against these defendants which would indicate that they were personally involved in any alleged violation of his constitutional rights. Thus, these defendants should be dismissed from this action for the plaintiff's failure to state a claim against them upon which relief may be granted.

Moreover, to the extent that the plaintiff is bringing this action against the defendants for failure to provide proper medical care, in order to establish an Eighth Amendment claim based upon allegations of denial of proper medical care, an inmate must demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97 (1976). This standard requires both deliberate indifference on the part of the prison officials and a serious medical need on the part of the prisoner. See West v. Keve, 571 F.2d 158 (3d Cir. 1978).

A deliberate action is one which is intentional, requiring the actor to have knowledge of the events attributed to the injury and the ability to control the outcome. "To establish a constitutional violation, the indifference must be intentional and the action related thereto deliberate." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). A mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives, does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied., 450 U.S. 1041 (1981).

The Supreme Court has held that negligence or inadvertence alone do not constitute a constitutional deprivation. Whitley v.

5

Albers, 475 U.S. 312 (1986); Davidson v. O'Lone, 474 U.S. 344 (1986). In Daniels v. Williams, 474 U.S. 327 (1986), the Court noted that "[l]ack of due care suggest no more than a failure to measure up to the conduct of a reasonable person." Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. Wilson v. Seiter, 501 U.S. 294 (1991).

Further, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, the federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law. See Ellison v. Scheipe, 570 F.Supp. 1361, 1363 (E.D.Pa. 1983); Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); See also Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desired. Farmer v. Carlson, supra, 685 F. Supp. at 1339.

Here, it cannot be said that any of defendants were deliberately indifferent to the plaintiff's medical needs. According to the plaintiff's own allegations, he was treated on numerous occasions by both prison medical staff and outside physicians for his condition. It would appear then that the plaintiff is simply disagreeing with the course of treatment he received. As such, the plaintiff has failed to sufficiently set forth an Eighth Amendment claim.

On the basis of the foregoing,

6

**IT IS RESPECTFULLY RECOMMENDED THAT:**

the plaintiff's complaint, (Doc. No. 1), be dismissed for the plaintiff's failure to state a claim upon which relief may be granted.

*[signature]*
RAYMOND J. DURKIN
United States Magistrate Judge

Dated:     October 23, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HERMAN SWIFT,                     : CIVIL ACTION NO. 3:00-1705

    Plaintiff               : (KANE, J.)

    v.                      : (DURKIN, M.J.)

MARTIN HORN, et al.,              :

    Defendants              :

FILED
SCRANTON
OCT 2 4 2000
PER _____
DEPUTY CLERK

N O T I C E

TO:    Herman Swift, Reg. No. CE-8598
       SCI-DALLAS
       Drawer K
       Follies Road
       Dallas, PA    18612-0286

    NOTICE IS HEREBY GIVEN that the undersigned has entered the following:    Report and Recommendation of Magistrate Judge Durkin dated 10/23/00.

Any party may obtain a review of the magistrate judge's above proposed determination pursuant to Rule **72.3**, M.D.PA, which provides: **72.3 REVIEW OF REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGES ADDRESSING CASE DISPOSITIVE MOTIONS**

    Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the

magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall made a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                           /s/ Raymond J. Durkin
                                                         RAYMOND J. DURKIN
                                                         United States Magistrate Judge

Dated:    October 23, 2000

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

October 24, 2000

Re: 1:00-cv-01705   Swift v. Horn

True and correct copies of the attached were mailed by the clerk to the following:

Herman Swift
SCI-D
SCI at Dallas
CE-8598
Drawer K - Follies Rd.
Dallas, PA  18612-0286

cc:
Judge                         ( )
Magistrate Judge              ( )
U.S. Marshal                  ( )
Probation                     ( )
U.S. Attorney                 ( )
Atty. for Deft.               ( )
Defendant                     ( )
Warden                        ( )
Bureau of Prisons             ( )
Ct Reporter                   ( )
Ctroom Deputy                 ( )
Orig-Security                 ( )
Federal Public Defender       ( )
Summons Issued                ( ) with N/C attached to complt. and served by:
                                  U.S. Marshal ( )    Pltf's Attorney ( )
Standard Order 93-5           ( )
Order to Show Cause           ( ) with Petition attached & mailed certified mail
                                  to: US Atty Gen ( )   PA Atty Gen ( )
                                      DA of County ( )  Respondents ( )

Bankruptcy Court              ( )
Other_____  ( )

MARY E. D'ANDREA, Clerk

DATE: 10/24/00              BY: KW
                                Deputy Clerk